Please proceed. Your Honor, this case has obviously been briefed rather extensively, and I know the Court has read the brief, so I will try to just give you an overview of where I think this case should go from here. What's your, again, you have indeed briefed it well, what's the number one issue that you think is the real nail for your hammer? What do you want us to remember? Well, Your Honor, especially on the claim for disability discrimination, I think it's important to remember that it's a motion for summary judgment. And we have a situation where This is the California claim, right? Right, right. And the Court, relying on the California Supreme Court case in Green, which was not a motion for summary judgment, that was a case where there was an issue on the jury instructions regarding the disability discrimination claim. I think what's important for the Court to focus on here is that if what the district court said applies in this case, then basically it turns the disability discrimination And in the Fair Employment and Housing Act on its head, because any employer could then terminate an employee if that employee had a doctor's note indicating that that employee was at least temporarily disabled and not able to perform the functions of a job. You raise an interesting point, and I used to be on the California Fair Employment and Housing Commission, so I'm aware of this law as well as what's happened since then. So I'm empathetic to your concern, but I'm just troubled in this case how an employer on that side of it is supposed to deal with this. Their allegation is that your client, however nice a person she may have been or is, simply was unable to perform the essential duties of a manager. Now, your point is, okay, she couldn't do it because she wasn't feeling well. She was sick. And their argument is, look, we appreciate this, but in effect, unless we have her here during this key time in our sales period, we're going to lose a ton of money here. We can't do this. Under California law, and particularly under the Artiega case, how is that – how is the employer wrong in that situation? Well, Your Honor, let me answer that in two separate ways. Okay. First of all, if you look at what actually happened in the case, because I understand that what they're saying is, and what they said in the letter they wrote to her was, that you're not here, it's the holiday season, we need you. Because you're not here, we have to let you go. You're that important to us. Well, what happened? We now know exactly what happened, and it's in the record what happened. What happened was they did not replace her during the holiday season. And, in fact, there wasn't a manager at the facility until months and months later, until after the holiday season had long since come and gone. So on that – Well, wasn't Ayer appointed as the de facto manager? Correct, Your Honor. And that's exactly the kind of accommodation that an employer has the required – that an employer is required to do when they're faced with this situation. I mean, first of all, when she first – and we have two issues here. We have the psoriatic arthritis, and then we have the broken foot issue. Ms. Lawler asked – when she was first diagnosed with a psoriatic condition, asked for reduced hours. There was never any response to that, just radio silence about that. She then broke her foot and then found herself terminated a couple of weeks later. So I think what the Court needs to focus on here is that if you look at exactly what happened, the quote, unquote, excuse given by the employer here is a wholly empty excuse because it didn't turn out to be true. Because of what the employer did, not because of what it said, right? Correct. Okay. And is that the standard under California law as an evidence that it really was pretexted, basically? Well, I think it certainly is a question of fact that a jury should be entitled to weigh all the evidence and see is this a pretext or isn't it a pretext. So on that point, you would want us to send that point at least back for trial? Absolutely, Your Honor. Do you agree that you've got a problem with some of the other ones? On the harassment claim and the intentional infliction claim? Those are more problematic. Okay. So this is really your strongest point here. Well, the disability discrimination claim and then the issue of the pretext because she – the retaliation because she wrote this letter, I think that's an important claim as well. Counsel, Judge Gould, if I could interject a question, please. Sure. You know, I think there's some ADA precedent in the Humphrey case saying a leave of absence can be a reasonable accommodation. Correct. And I'm sure there are times when a short leave of absence would be appropriate. Let's say someone would have a surgery and it would take two days or whatever and a week recovery. But could you address the duration here? Because my impression was that in August she's asking for a five-month leave of absence, which covers the whole Christmas season when Mont Blanc, you know, Do we have cases that talk about duration of a leave of absence and when a particular duration would be reasonable? You know, Your Honor, I don't know that. I have not researched that issue. That did not come up either in the briefing or in the court's decision, so I'm not sure about that. But I would point out to Your Honor that the actual leave of absence was not requested until sometime in September, not in August. And the leave of absence was precipitated more by the request for the leave of absence was precipitated both by the condition of the psoriatic condition as well as the issue of the foot. So it would have been a five-month, roughly five-month leave for September, October, November, December into early January, right? It was requested in early September. I think it would have been just under five months. That's correct. And my question is, is there any precedent saying, like, a leave for that length of time is a reasonable accommodation that's required? Well, I think that would be a question of fact for the jury to decide if it was an issue. I have not – I do not know of any case law that indicates that it is, as a matter of law, an unreasonable amount of time to either request or to grant or not grant. Okay. Thanks. Thank you, counsel. Does the size of the business have any bearing on this at all? I think it does, again, from a factual point of view. Certainly, if you're talking about a mom-and-pop sandwich shop or something, it's different than talking about a multinational corporation the size of Mont Blanc. Right. So I think that is probably, again, an issue that could be raised. Is there any case law that would help us on that in terms of accommodation, what's required? I agree with you. If you've got mom-and-pop shop and you've got three people, a husband and a wife and an outside person, and the outside person is going to cover the night hours and the person says, I've got to be gone for five months, I've got this illness, I think the law maybe treats that a little differently than a big, big corporation. I think you're right, Your Honor. And I know you have been in this area a while and so have I. And I know there is probably case law on that, but I do not have it at my fingertips. I apologize. Okay. All right. Do you want to save any time? You have more time. You can take as long as you like. You've got over five minutes. But do you want to save time now or do you want to go ahead with the presentation? Well, if, Your Honors, I know you've read the briefs. Obviously, you're very familiar with the case. I would only point out, with respect to the harassment and the intentional infliction claim, I think Your Honors do need to take to keep in mind the issue of the tape, because I do think that that is an important issue and I do think that the case is So I have a question. I have a question for you on that. That's the argument that there's spoliation by creating something over the old tape so you don't have a tape of when Mr. Schmidt is in the back room with her or whatever. Correct. Right? Correct. Okay. So my question is this. She was aware of the tape, right? So she wanted that to be preserved. Did she have some duty herself or through her lawyer to tell the company, you know, I've got a gripe about how I was treated by Mr. Schmidt, and I want you to keep that tape. Well, Your Honor, first of all, the tape was taped over within a month of her writing the letter to the HR department complaining about the incident, and way before she got counsel and filed, who wrote me, writing a letter and then filing a lawsuit. And as soon as we did file the lawsuit and did a request for production, part of our request for production was for that tape. So I think, you know. In the normal course of business, would that tape have been erased, you know, repeatedly used and erased just by the way the system worked? I assume so. Okay. I assume that's the case here. So is there any evidence, I'm not sure how much of this is in the record, but just so I understand the context, is there any evidence of intentional spoliation in this situation where they knew there was something on there and they intentionally destroyed it? Well, I can't say that. There's no direct evidence of that, Your Honor. I think it's an assumption one could make given the fact that they knew there was – they obviously did know there was a tape and they knew there was an incident and they knew there was a complaint about an incident. Well, they didn't know there was a complaint. They knew that possibly there was a complaint. The person who knew there was a complaint was your client. Correct. I mean, but she did write a letter to HR complaining about the incident. All right. But at that point – Which is usually a precursor to some sort of legal action. But isn't it true at that point it was already done over? No. No. When she wrote the letter, it was – the tape was still in existence. It was taped over about 30 days later. Okay. All right. Very good. Do you want to save the rest of your time then? I would, Your Honor. Very good. Thank you. Okay. We'll hear from Mr. Shaw then. May it please the Court. My name is Vimal Shaw. I'm an attorney representing Montblanc, the defendant in this matter. I'll address a couple of questions that were raised during counsel's oral argument first. As to the spoliation issue, I think that counsel himself stated that the tape was taped over as a routine practice long before she even got counsel. And so long before any contemplated lawsuit was even contemplated by the plaintiff, let alone notice was given to the company. And I think that the Napster case that we cited in our brief makes that very clear, that there has to be probable litigation before – a notice of probable litigation before a party to a litigation has an obligation to preserve, you know, possible evidence. Maybe I misunderstood Mr. Korda's statement, Mr. Shaw, but I thought he said that his client sent a letter to the HR department of Montblanc before this recording was destroyed. Did I misunderstand? No, no. That is correct. Okay. And his point was, I think, that when an HR department receives a letter of the nature that was sent there, it was certainly an indicator that, at the very least, that Ms. Lawler was very unhappy about this and felt she had been legally wronged. Would you agree with that? I don't agree with that, Your Honor. Okay. Why is that? Because the text of the letter does not identify any discrimination or, on its face, it doesn't say that it's correct. It wasn't a lawyer's letter. I get that. It wasn't. But there was no citation to any illegal conduct. And any reader, particularly a non-legal person like an HR person, or even – I think when – if Your Honor reads the letter, you'll clearly indicate that there was no notice to the company that says, I am going to sue the company. Does that have to be in there to put you on notice? Well, pretty much. In the Napster case – and the Napster case is a good case for that. And that is that in that case, a subpoena – Napster, which is a big website. Right. We know about Napster and the circuit. It was being sued for some sort of investment issue. And it had issued a third-party subpoena to one of Napster's investors. And that investor was on notice of the litigation, but it was not a party. And in addition to that, it had a joint defense agreement, I believe, with Napster. But nevertheless, the court in that case held that the third part, that it was not on notice of a litigation for the purpose of indicating some spoliation, which was charged by the plaintiff when that third party became a party to the litigation. May I suggest, Mr. Shaw, you all have briefed this pretty well. This is not a major issue here, I don't think. But I would – at least for my part, I would be very interested in hearing your response to the California Government Code section 12940H claim. Sure. Which Mr. Korda would like us to reverse and remand to the district court to have a trial on that. The issue which is raised is, of course, an important one. Here you've got a statute that's been construed many times by both California and federal courts and by administrative agencies that makes it clear that certain conditions are, in effect, protected by law. You've got to accommodate as best you can under the circumstances. Their allegation is that for strictly medical reasons, she needed time off. They said, you can't perform these functions at all, so we're going to let you go. You've got, you know, obviously a conflict here. Even if both parties acted in good faith, you've got a conflict. How does the case law tell us to deal with this issue? To what level is Montblanc required to accommodate her? And where does that end and the company's legitimate business interests begin? Okay. Well, first of all, I think a good place to start is the statute itself. Okay. And the statute, the 12940A1 and A2, specifically provides that it's not unlawful for an employer to discharge an employee who has a disability, and because of that disability is unable to perform the essential functions of the job with a reasonable accommodation. That's what the statute provides. Right. That's A1, right? Okay. Yes. A1. But also A2 is pretty much reflective of that. And so that, in that instance, then, I think that we have the plaintiff's testimony which said that she wasn't able to perform the essential functions of the job, that she wasn't able to do any functions of the job, essential or otherwise. She just wasn't able to come to work for a very long period of time. Let's take a different situation. Let's assume for a moment that she said, I want to be gone for a week. Would your client have been justified in terminating her during that period? I don't know. And here's why. Because, you know, we talked about this mom and pop versus a very large company. And let's talk about the Mont Blanc store that Ms. Lawler managed. It had four full-time employees, including her, and two part-time employees. And she was the manager. She was the head person. And so it was, it fell to her to run that store. Okay. And she testified. She testified what her essential functions were. And she testified that she had to directly deal with customers. She had to directly deal with the product. She had to directly deal with the employees. All that work had to be done in the store. And she worked 60 to 70 hours a week in the year before her injury. And that she also said that during the holiday season she also works between 60 and 70 hours a week. It is a very full-time job that has to be done in the store. Now, she testified and her doctor advised the company that she wasn't able to do anything. And the company specifically then sent another letter to the doctor and said, is there any accommodation that you can think of that would allow her to do the essential function of the job? Because the essential function of the job required her to come in and, you know, do all these customer. Counsel, Judge Gould, if I could interject. I'm sort of on the question Judge Smith asked. I can understand someone might have a situation where they need a certain amount of time off. During that time that they're off, their leave of absence, they will not be performing any functions for the job. They can't manage a store if they're out. But let's say instead of a week leave of absence, they wanted a two-day leave of absence or three days to have some sort of laser surgery or some other procedure where they go into a hospital or clinic and they're done in a day. They have to rest for a day. Then they go back to the 60-hour weeks. Isn't there some level at which under California law a company would have to give a short leave of absence to someone so they could keep up with their job without losing it? And if so, where do you draw the line? And back to my earlier question on duration, are there any cases that address that? Well, again, I'm not – I don't know that we have a bright line, Your Honor, with respect to the cases. And I don't think there is a bright line because I think it depends on situation by situation. Okay. So you're – if I understand it, you're saying to Judge Gould and my questions is, yeah, California law does require an accommodation of some sort for some period of time, but it's not defined, so we don't have a bright line. But in this case, as I understand it, the point was made we have got to have a manager here. This is a really important thing. And yet when Ms. Lawler is gone, you don't get a manager. You have the same people that were there. Admittedly, one of them allegedly performed the managerial function, but you didn't get a new person. You had the same people that you had there. So doesn't that raise some question? And if so, is that something a jury ought to determine, or is that something that the district court could decide on summary judgment? Well, I think that goes to the pretext argument. But – and remember that Judge Koh granted summary judgment on the discrimination claim on two bases. One basis is that she was not a qualified employee under the statute because she couldn't perform the essential functions of the job with reasonable accommodation. And under that – under that provision, okay, the Green case and interpreting the California law specifically says that it is the plaintiff's burden to provide specific facts that show that she, in fact, is able to do the essential functions of the job with reasonable accommodation. And all we had was we had her doctor saying she can't do anything. So basically, from your perspective, the predicate for her getting relief was, in a sense, given away by her, waived by her, because she says, I can't do this even with an accommodation. That's right. Again, there was no accommodation for the period that we needed her. She was not able to work at all in the critical period. And I think the cases that we cited, the Kennedy v. Applause case, which is cited from this Court, and the Thomas v. Federal Express, both of those cases decided similar issues on summary judgment. And so these things can be decided on summary judgment. Now, getting to the pretext argument, the pretext argument, the law provides that you have to have significant or substantial responsive evidence of a pretext that would allow a jury to determine. And the only this issue about, well, it took us seven months to hire a manager. Now, let's see what happened in that instance. What happened was that we had her boss, which is a regional manager who sits in Las Vegas, she had to fly more frequently into and work at this particular store than she otherwise would to cover some of the managerial duties. And then the other managerial duties also fell to the assistant manager. So there was a de facto manager or actually two managers in place during the time that the – until they could find somebody. Now, that doesn't mean they didn't try. But does the record indicate whether they looked for somebody? They did. Okay. They began to look right away. And then, you know, as soon as they terminated her, Mike Giannazio, who is the vice president of that region, specifically told the HR director, find me somebody right away. And did they advertise? Did they – what did they do? Well, I think they did, Judge. And I don't have that in front of me. But they did do that. They did look. Now, Ms. Lawler herself testified that even for a sales associate, which is just an ordinary salesperson on the floor, a person that she would manage, it takes months, six months, for that person to become proficient. It's a very specialized – it's not like working at Target or somebody else, something like this. This is a very specialized, it's high-end, high-end work. And so that it took seven months to hire someone who is a suitable manager is not unusual. And it just took – it just took that long because you require somebody that has very specific skill sets. And so that actually is not inconsistent with what the company said, which was we need to get somebody right away. But they did look right away, and that's what the records show. So on those points, I think that, you know, on both grounds for terminating or for dismissing her discrimination claims, both on the qualified count and on the pretext count, I think that it's very solid that Judge – So basically, from your perspective, Ms. Lawler just has a failure of proof to show there was pretext, no proof to show that she could perform the essential functions. Is that correct? That's exactly right. And that was her burden, Judge. Right. Okay. Thank you very much. Your time is up. So thank you for your presentation. Almost perfectly. What? Almost perfectly. Yeah, the timing was good there. Okay. We'll hear from Mr. Porter. Thank you, Your Honor. I will be very, very brief. I know there's been a lot of discussion about this, the length of the request for the leave. So I want to just point the Court to the Green case, which is kind of the highlight case here. And in the Green case, there were efforts made at accommodating the plaintiff in that case before he was terminated. And if you look at page, I believe, three – well, you know, that's the different citation I have here. I think it's page 393 of the case. It indicates that one of the accommodations – and this is only one of the accommodations made by the defendant in that case – was to place the plaintiff on leave from November of 1999 to July of 2000. So there you have a case where they actually did do the accommodation by putting him on leave for a longer period of time than we're talking about here. And then certain events occurred after that that finally resulted in his termination. Yes, but counsel, that's something that the employer did out of the goodness of his heart. Well, I'm not so sure about that, Your Honor. I don't know either. I'm just saying. I mean, they placed him – the employer placed him on leave because he requested the accommodation because of a physical injury. Yeah. Now, I'm assuming the employer here was doing their best to follow the law. Sometimes employers do things just out of the goodness of their hearts. That's possible. But usually they do things because they're legally required to do them. Sometimes lawyers give you the wrong impression. Touche. And with that, I would submit it, Your Honor. Very good. Thank you both for fine arguments. Appreciate it. The case of Lawler v. Montblanc, North America, LLC, is submitted. And the Court stands in recess for the day. Thank you. All rise.
judges: Duffy, Gould, Smith